UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TERRY WILLIAM NEAL,

        Plaintiff,                Case No. 1:10-cv-1075

v.                                          Honorable Gordon J. Quist

UNKNOWN ELLIS et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Hofner, Hawkins, M. Cooley, (unknown) Cooley, Boatman, Saunders and Thompson. The Court will serve the complaint against Defendant Ellis.

**Discussion**

    I.        Factual allegations

Plaintiff Terry William Neal presently is incarcerated at the Michigan Reformatory, though the actions he complains of occurred while he was housed at the Lakeland Correctional Facility (LCF). He sues the following LCF employees: Resident Unit Officer (unknown) Ellis; Deputy Warden B. Hofner; Assistant Deputy Warden Dan Hawkins; Resident Unit Manager M. Cooley; Captain (unknown) Cooley; and Corrections Officers (unknown) Boatman, (unknown) Saunders, and (unknown) Thompson.

According to the complaint, on June 19, 2009 at 12:30 p.m., Plaintiff asked Defendant Ellis for toilet paper. Defendant Ellis was aware that Plaintiff had a medical condition that caused him to use the bathroom more frequently. Ellis allegedly joked about Plaintiff's condition, and refused Plaintiff's repeated requests for toilet paper. When Plaintiff asked for a grievance form, Ellis refused, telling Plaintiff, "[Y]ou don't want no grievance, really you don't!" (Compl., ¶ 13, Page ID #6.) Much later in the day, when Defendant Boatman returned to the unit, Plaintiff asked Boatman for toilet paper. Boatman expressed surprise that Ellis had not given Plaintiff toilet paper long before, and he then gave Plaintiff the toilet paper. That same day, Plaintiff filed a grievance against Ellis.

Two weeks later, Defendant M. Cooley heard Plaintiff's grievance at Step I. When Plaintiff explained what had happened, M. Cooley stated, "I have been lied to by Ellis, and that he told me that the reason he did not give you any toilet tissue [was] because there was not any available." (Compl., ¶ 15, Page ID #7.) M. Cooley told Plaintiff that she was going to speak with Boatman to confirm that he had given Plaintiff the toilet paper that she would get back to Plaintiff about the grievance.

On August 18, 2009, Plaintiff and two other prisoners were called to go to the Control Center to be heard on a misconduct ticket. Defendant Ellis was present and told Plaintiff, "Neal, I know your name, you wrote a grievance on me." (Compl., ¶ 16, Page ID #7.) Ellis became irate and was verbally abusive, using racial epithets. Plaintiff remained calm. Ellis then challenged Plaintiff to a fight, stating, "When you get back from up front being heard on that ticket, I'm going to take you in the back and beat your 'black ass' and if you decide to write a grievance on me for not giving you toilet tissue, I can imagine what you'll do when I beat the shit out of you." (*Id.*, ¶ 17, Page ID #8.) When the three prisoners began to move toward the front, Defendant Ellis spit on Plaintiff. Plaintiff expressed disbelief and asked if Ellis had just spit on him. Ellis said, "Yeah, I spit on you do something about it." (*Id.*, ¶ 18.) Ellis then grabbed Plaintiff by the arm so hard that he dislocated Plaintiff's shoulder from the socket. Plaintiff was handcuffed by the other unnamed Defendant corrections officers who were present. He was taken to Defendant Hofner's office, where he was asked to write out his statement. Defendant Hofner told Plaintiff that the other staff members had made statements and had told Hofner that Ellis had started an argument with Plaintiff, had spit on Plaintiff, and had assaulted Plaintiff. Hofner advised Plaintiff that, notwithstanding the staff corroboration, he was required to place Plaintiff in segregation for a day or two. Plaintiff was confined to segregation for ten days.

While he was in segregation, Plaintiff asked Defendant Thompson for a grievance form. Thompson refused to provide the form, telling Plaintiff that he could not grieve a major misconduct charge, which apparently had been filed by Ellis. Thompson also advised Plaintiff, "Neal, there is no need to grieve the situation any way, because that's how you ended up in segregation and in this situation in the first place, so you should stop while you are ahead." (*Id.*, ¶ 22, Page ID #9.)

Several days later, while still in segregation, Plaintiff spoke to Defendant Captain Cooley about the violations of his constitutional rights not to be falsely accused, to due process, to be free from cruel and unusual punishment, and free from retaliation. Plaintiff told Defendant Cooley that he wanted to file several grievances. Cooley told Plaintiff that he could not grieve a misconduct ticket, and he refused Plaintiff's request to call his mother. Cooley told Plaintiff, "Neal, you cannot use the telephone and you should just leave this situation and incident alone, we will transfer you and then sweep this whole incident of assault and retaliation under the rug and where ever you are transferred have them contact me and I'll let you be transferred back [to] Lakeland Facility at a later date." (*Id.*, ¶ 23, Page ID #10.)

Plaintiff subsequently spoke with the unknown LCF hearing investigator. After interviewing another corrections officer, who apparently corroborated Plaintiff's statement, the investigator told Plaintiff not to worry, as the misconduct charge against him would be dismissed because of staff misconduct and assault upon Plaintiff.

On the date of the assault, Plaintiff complained about extreme pain in his shoulder and requested medical attention. He was seen by Nurse Gary Baker. Baker gave Plaintiff Motrin and told him that he would be seen by a doctor and x-rays would be ordered. Plaintiff allegedly sat in segregation all night in pain, and he again requested medical attention the next day, August 19, 2009. He saw Nurse Deanna Earl, who again prescribed Motrin for the pain. She ordered that pictures be taken of the bruises on Plaintiff, and those pictures were taken two days later.

On August 22, 2009, Plaintiff was interviewed by Inspector Desmond and an unknown assistant deputy warden from another facility. Plaintiff was again informed that he would not be heard on the misconduct because staff had admitted that Plaintiff was the one who was

assaulted. Plaintiff was also advised that he would be transferred to another Level II facility, allegedly because of his grievances and complaints.

Plaintiff's mother came to visit on August 20, 2009, after having learned of the assault. Because she was very upset, staff allowed only a non-contact visit, notwithstanding Plaintiff having been informed that he was not being punished. After she left the prison, Plaintiff's mother reported the assault to the Michigan State Police and contacted the headquarters of the Michigan Department of Corrections (MDOC). Plaintiff was transferred to Brooks Correctional Facility (IBC) on August 28, 2009.

On September 13 or 14, 2009, Plaintiff was visited by Bruce Siebert of the MDOC Internal Affairs Division, who was investigating the matter. Siebert informed Plaintiff that the major misconduct ticket would not be heard and Plaintiff could file a grievance on the matter. Plaintiff filed a grievance on September 16, 2009.

On September 18, 2009, Plaintiff received a Step I response to the grievance he filed on June 19, 2009, regarding the denial of toilet paper. Plaintiff alleges that the grievance response was falsified and untimely. A response to Plaintiff's September 16, 2009 grievance was continuously delayed and ultimately denied because the incident was under investigation by the Internal Affairs Division. (Att. E. to Compl., 42-53.)

Plaintiff alleges that he has been transferred for filing a grievance against Ellis. He also contends that he was deprived of due process by the transfer because he was sent to a less desirable prison facility and consequently lost one of the best-paying jobs offered by the MDOC. Further, Plaintiff alleges that Ellis' assault was made in retaliation for Plaintiff's protected conduct in filing a grievance. In addition, Plaintiff alleges that his rights under the Eighth Amendment were violated by Ellis' assault and by the other Defendants' deliberate indifference to that assault. He

also alleges that Ellis' denial of toilet paper violated the Eighth Amendment. Further, he complains that he was subjected to racial discrimination in violation of the Equal Protection Clause. He also asserts that he was denied his right of access to the courts by the actions of Defendants M. Cooley, Captain (unknown) Cooley and Hawkins when they failed to process, delayed or tampered with his grievances.

Plaintiff seeks declaratory and injunctive relief and $1 million in compensatory and punitive damages.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Retaliation

Plaintiff alleges two broad types of retaliation. First, he alleges that Ellis spit on him and assaulted him in retaliation for filing a grievance against Ellis. Second, he alleges that the remaining Defendants placed him in segregation, refused to process his grievance and ultimately transferred him in retaliation for filing a grievance against Ellis.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Filing a grievance is constitutionally protected conduct under the First Amendment. *See Smith*, 250 F.3d at 1037; *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). To the extent that Plaintiff alleges that Defendant Ellis retaliated against him by spitting on him and assaulting him, he clearly states a claim and his complaint will be served.

Plaintiff, however, cannot show that the remaining Defendants either took adverse action against him or that their conduct was causally connected to the filing of a grievance against Ellis. First, Plaintiff's transfer to another Level II facility does not constitute adverse action. As the Sixth Circuit has explained, "[s]ince prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted). If, however, a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Sigger-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney); *Johnson v. Beardslee,* No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007). Similarly, the Sixth Circuit has held that a transfer to segregation or to an area of the prison used to house mentally disturbed inmates could be sufficiently adverse. *See Thaddeus-X*, 175 F.3d at 398.

Plaintiff's transfer was from one level II facility to another level II facility. Plaintiff does not allege that his access to the courts was compromised as a result of the transfer; he only alleges that he lost his preferred prison job. Plaintiff does not have a federally cognizable liberty interest in a prison job. *See, e.g.*, *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"). Under these authorities, the transfer is insufficient to constitute an adverse action, and Plaintiff fails to state a claim for retaliation based on the transfer. *See Sigger-El*, 412 F.3d at 702

Moreover, the failure to timely or accurately process a grievance does not amount to adverse action. Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Further, even if Plaintiff's grievance was delayed or altered, his right to access the courts by filing a lawsuit, *see Lewis v. Casey*, 518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977), cannot be compromised by his inability to file an institutional grievance. The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. As a result,

Defendants' alleged failure to timely process a grievance is not sufficiently adverse as to deter a person of ordinary firmness from filing the grievance.

Moreover, Plaintiff fails to allege facts that would support the necessary causal connection between the filing of his grievance and any action by a Defendant other than Ellis. In some circumstances, close temporal proximity between the protected conduct and adverse action may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Moreover, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.

> In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough."

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010).

Here, Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive. The only grievance filed by Plaintiff prior to his transfer on August 28, 2009 was the June 19, 2009 grievance, in which Plaintiff alleged that Ellis had intentionally deprived him of toilet paper for some hours, despite knowledge of Plaintiff's medical condition that required the use of toilet paper. Plaintiff does not allege that any Defendant other than Ellis took any action against Plaintiff until more than two months later, after Ellis had assaulted him. Such a significant gap in time between the filing of a grievance against one

Defendant and the allegedly retaliatory conduct of other Defendants is insufficient to raise an inference of retaliation. Moreover, Plaintiff provides no factual allegation that would suggest that any Defendant other than Ellis was motivated by the June 2009 grievance. Indeed, all of the facts alleged by Plaintiff support a contrary inference: the actions were taken to separate Plaintiff from Ellis and to eliminate further potential friction. Plaintiff expressly alleges in his complaint that Defendants repeatedly informed him that staff statements supported his claim that Ellis had spit on him and attacked him without provocation. They told him that the misconduct charge against him would not be heard. They undertook investigations, both at the prison facility and in the Internal Affairs Division. And Defendants informed Plaintiff that, notwithstanding his innocence of any misconduct, he would be briefly segregated and then transferred, but only to another Level II facility. In such a factual context, Plaintiff's allegations that Defendants retaliated against him for filing a grievance are wholly conclusory. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Ashcroft*, 129 S. Ct. at 1949 (recitals of the elements of a cause of action, supported only by conclusory statements, are insufficient to state a § 1983 claim).

For all these reasons, Plaintiff fails to state a claim of retaliation against any Defendant other than Ellis.

### B. Due Process

Plaintiff also alleges that he was deprived of his Fourteenth Amendment rights when Defendants placed him in segregation for ten days and then transferred him to a another prison facility without due process of law. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d

795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation for 30 days did not implicate a liberty interest because the segregation at issue did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005). Plaintiff's placement in segregation for ten days clearly is neither atypical nor significant. *Sandin*, 515 U.S. at 484

Moreover, prisoners do not have a constitutional right to be incarcerated in any particular institution. *See Meachum v. Fano*, 427 U.S. 215 (1976). Moreover, the Supreme Court repeatedly has held that the ability to transfer prisoners is essential to prison management and that requiring hearings for such transfers would interfere impermissibly with prison administration. *Id.*;

*Olim v. Wakinekona*, 461 U.S. 238 (1983); *Montanye v. Haymes*, 427 U.S. 236 (1976). "Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all." *Meachum*, 427 U.S. at 228; *Ward v. Dyke,* 58 F.3d 271, 274 (6th Cir. 1995). As a consequence, Plaintiff fails to state a due-process claim based on his transfer to another prison.

Plaintiff also appears to allege that he was deprived of due process when his grievance was not processed in a timely and accurate way. As previously discussed, Plaintiff has no due process right to file a prison grievance. *See, e.g., Walker,* 128 F. App'x at 445 (6th Cir. 2005); *Young,* 30 F. App'x at 569-70. Plaintiff therefore fails to state a procedural-due-process claim.

### C. Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might

endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

To the extent that Plaintiff contends that Ellis' actions violated the Eighth Amendment, his allegations are sufficient to state a claim. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Rhodes*, 452 U.S. at 346.

Plaintiff, however, fails to raise a cognizable Eighth Amendment claim against any other Defendant. First, the fact that Defendants placed Plaintiff in segregation for ten days fails to state an Eighth Amendment claim. Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347; *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Although it is clear that Plaintiff was denied certain privileges as a result of his administrative segregation, he does not allege or show that he was denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Bradley v. Evans*, No. 98-5861, 2000 WL 1277229, at *8 (6th Cir. Aug. 23, 2000); *Collmar v. Wilkinson*, No. 97-4374, 1999 WL 623708, at *3 (6th Cir. Aug.11, 1999).

Second, although Plaintiff alleges that the other Defendants were "deliberately indifferent" to Ellis' assault, he fails to identify any conduct committed by those Defendants that violated the Eighth Amendment. In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d

474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). Admittedly, the Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). However, to establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the defendant would cause prisoners serious harm. *Farmer,* 511 U.S. at 834; *Helling*, 509 U.S. at 32; *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). Here, Plaintiff does not allege that Defendants had any reason to know, in advance of the assault, that Ellis presented a threat to Plaintiff's safety. Indeed, once the assault occurred, Defendants acted promptly to isolate Plaintiff from Ellis and to remove him from danger by transferring him from the facility.

### D. Racial Discrimination

Plaintiff broadly asserts that he was subjected to racial discrimination, in violation of the Equal Protection Clause. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265-66.

Plaintiff's claim of racial discrimination is wholly conclusory. His only factual allegation related to race is that Ellis used racial epithets when he threatened Plaintiff for filing a grievance against Ellis. (Compl. ¶ 17, Page ID #8.) An allegation that a prison official used racial slurs, although unprofessional and reprehensible, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) (per curiam); *Jones Bey v. Johnson*, 248 F. App'x 675, 677-78 (6th Cir. 2007) (prison guard's use of racial slurs and other derogatory language against state prisoner did not rise to level of a violation of the Eighth Amendment) (citing *Torres v. County of Oakland*, 758 F.2d 147, 152 (6th Cir.1985)); *Williams v. Gobles*, No. 99-1701, 2000 WL 571936, at *1 (6th Cir. May 1, 2000) (occasional or sporadic use of racial slurs does not rise to a level of constitutional magnitude; *Bell-Bey v. Mayer*, No. 98-1425, 1999 WL 1021859, at *1 (6th

Cir. Nov. 3, 1999) (same); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). In light of the foregoing, Plaintiff fails to state a claim for a violation of the Eighth Amendment against any Defendant.

### E. Access to the Courts

Plaintiff complains that he was denied access to the courts by the actions of Defendants M. Cooley, Captain (unknown) Cooley and Hawkins when they delayed or tampered with his grievances. It is well established that prisoners have a constitutional right of access to the courts. *Bounds*, 430 U.S. at 821. An indigent prisoner's constitutional right to access the courts is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis*, 518 U.S. at 349; *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992). In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Moreover, the right of access to the courts "extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391 (citing *Lewis*, 518 U.S. at 355).

Plaintiff fails to allege that his pursuit of a nonfrivolous habeas corpus or civil rights claim has been impaired by Defendants' handling of his grievances. Indeed, Plaintiff filed the instant civil rights action challenging Defendants' conduct, and he has alleged no interference with that filing. Moreover, as previously discussed, a prisoner's right of access to the courts to seek relief

in a civil right lawsuit cannot be compromised by his inability to file an institutional grievance. Although a prisoner is required to exhaust his administrative remedies before filing a federal civil rights action, the exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be required.

### F. Supervisory Liability

To the extent Plaintiff suggests that the other Defendants are liable for Defendant Ellis' conduct because they supervised Ellis or denied Plaintiff's grievances about Ellis, he fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 129 S. Ct. at 1948. As previously discussed, Plaintiff has failed to allege that Defendants Hofner, Hawkins, M. Cooley,

(unknown) Cooley, Boatman, Saunders and Thompson engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Hofner, Hawkins, M. Cooley, (unknown) Cooley, Boatman, Saunders and Thompson will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court also will dismiss Plaintiff's due-process, equal-protection and access-to-the-courts claims. The Court will serve the retaliation and Eighth Amendment claims against Defendant Ellis.

An Order consistent with this Opinion will be entered.


Dated: December 30, 2010             /s/ Gordon J. Quist            
                                  GORDON J. QUIST
                              UNITED STATES DISTRICT JUDGE