UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY WILLIAM NEAL,

        Plaintiff,

Case No. 1:10-cv-1075

Hon. Gordon J. Quist

v.

UNKNOWN ELLIS, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendant David Ellis' motion for summary judgment (docket no. 17). The motion is unopposed.

    **I.**    **Background**

Plaintiff filed a complaint naming eight defendants. Compl. (docket no. 1). The incidents at issue in this action occurred at the Lakeland Correctional Facility (LCF). On initial screening, the court dismissed all claims except plaintiff's allegation that Resident Unit Officer (RUO) Ellis retaliated against him and used excessive force against him in violation of the First and Eighth Amendments. The court previously summarized plaintiff's allegations against RUO Ellis as follows:

> According to the complaint, on June 19, 2009 at 12:30 p.m., Plaintiff asked Defendant Ellis for toilet paper. Defendant Ellis was aware that Plaintiff had a medical condition that caused him to use the bathroom more frequently. Ellis allegedly joked about Plaintiff's condition, and refused Plaintiff's repeated requests for toilet paper. When Plaintiff asked for a grievance form, Ellis refused, telling Plaintiff, "[Y]ou don't want no grievance, really you don't!" (Compl., ¶ 13, Page ID #6.) Much later in the day, when Defendant Boatman returned to the unit, Plaintiff asked Boatman for toilet paper. Boatman expressed surprise that Ellis had not given

Plaintiff toilet paper long before, and he then gave Plaintiff the toilet paper. That same day, Plaintiff filed a grievance against Ellis. . . .

On August 18, 2009, Plaintiff and two other prisoners were called to go to the Control Center to be heard on a misconduct ticket. Defendant Ellis was present and told Plaintiff, "Neal, I know your name, you wrote a grievance on me." (Compl., ¶ 16, Page ID #7.) Ellis became irate and was verbally abusive, using racial epithets. Plaintiff remained calm. Ellis then challenged Plaintiff to a fight, stating, "When you get back from up front being heard on that ticket, I'm going to take you in the back and beat your 'black ass' and if you decide to write a grievance on me for not giving you toilet tissue, I can imagine what you'll do when I beat the shit out of you." (Id., ¶ 17, Page ID #8.) When the three prisoners began to move toward the front, Defendant Ellis spit on Plaintiff. Plaintiff expressed disbelief and asked if Ellis had just spit on him. Ellis said, "Yeah, I spit on you do something about it." (Id., ¶ 18.) Ellis then grabbed Plaintiff by the arm so hard that he dislocated Plaintiff's shoulder from the socket. Plaintiff was handcuffed by the other unnamed Defendant corrections officers who were present. He was taken to Defendant Hofner's office, where he was asked to write out his statement. Defendant Hofner told Plaintiff that the other staff members had made statements and had told Hofner that Ellis had started an argument with Plaintiff, had spit on Plaintiff, and had assaulted Plaintiff. Hofner advised Plaintiff that, notwithstanding the staff corroboration, he was required to place Plaintiff in segregation for a day or two. Plaintiff was confined to segregation for ten days. . . .

On the date of the assault, Plaintiff complained about extreme pain in his shoulder and requested medical attention. He was seen by Nurse Gary Baker. Baker gave Plaintiff Motrin and told him that he would be seen by a doctor and x-rays would be ordered. Plaintiff allegedly sat in segregation all night in pain, and he again requested medical attention the next day, August 19, 2009. He saw Nurse Deanna Earl, who again prescribed Motrin for the pain. She ordered that pictures be taken of the bruises on Plaintiff, and those pictures were taken two days later.

On August 22, 2009, Plaintiff was interviewed by Inspector Desmond and an unknown assistant deputy warden from another facility. Plaintiff was again informed that he would not be heard on the misconduct because staff had admitted that Plaintiff was the one who was assaulted. Plaintiff was also advised that he would be transferred to another Level II facility, allegedly because of his grievances and complaints.

Plaintiff's mother came to visit on August 20, 2009, after having learned of the assault. Because she was very upset, staff allowed only a non-contact visit, notwithstanding Plaintiff having been informed that he was not being punished. After she left the prison, Plaintiff's mother reported the assault to the Michigan State Police and contacted the headquarters of the Michigan Department of Corrections

(MDOC).  Plaintiff was transferred to Brooks Correctional Facility (IBC) on August 28, 2009.

On September 13 or 14, 2009, Plaintiff was visited by Bruce Siebert of the MDOC Internal Affairs Division, who was investigating the matter.  Siebert informed Plaintiff that the major misconduct ticket would not be heard and Plaintiff could file a grievance on the matter.  Plaintiff filed a grievance on September 16, 2009.

On September 18, 2009, Plaintiff received a Step I response to the grievance he filed on June 19, 2009, regarding the denial of toilet paper.  Plaintiff alleges that the grievance response was falsified and untimely.  A response to Plaintiff's September 16, 2009 grievance was continuously delayed and ultimately denied because the incident was under investigation by the Internal Affairs Division. (Att. E. to Compl., 42-53.)

Plaintiff alleges that he has been transferred for filing a grievance against Ellis.  He also contends that he was deprived of due process by the transfer because he was sent to a less desirable prison facility and consequently lost one of the best-paying jobs offered by the MDOC.  Further, Plaintiff alleges that Ellis' assault was made in retaliation for Plaintiff's protected conduct in filing a grievance. In addition, Plaintiff alleges that his rights under the Eighth Amendment were violated by Ellis' assault and by the other Defendants' deliberate indifference to that assault. He also alleges that Ellis' denial of toilet paper violated the Eighth Amendment. Further, he complains that he was subjected to racial discrimination in violation of the Equal Protection Clause. . . .

Opinion at pp. 1-5 (docket no. 8).

## II. RUO Ellis' motion for summary judgment

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

> (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2nd Cir. 1996). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing

investigation of the record" to demonstrate the existence of genuine issues of material fact. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

### B. Failure to exhaust

#### 1. Exhaustion requirement

The PLRA, 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

#### 2. The Michigan Department of Corrections (MDOC) grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grieveable issue,

unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Plaintiff has not properly exhausted a grievance with respect to the alleged assault of August 18, 2009

In an affidavit filed in support of Ellis' motion, Richard B. Stapleton, Administrator for the Office of Legal Affairs at the MDOC, stated that he has overall responsibility for Step III grievance decisions. Richard Stapleton Affidavit at ¶ 1 (docket no. 18-3). This record establishes that the only grievance exhausted through Step III is LCF-2009-09-1036-17b ("1036"). *Id.* at ¶ 14. This grievance named Ellis and a number of former defendants, alleging an incident date of September 15, 2009, the date when he met with Internal Affairs Investigator Bruce Siebert. *See* Grievance 1036 (docket no. 18-3).

When asked to describe the attempts he made to resolve this issue prior to writing a grievance, plaintiff stated as follows:

> This grievance is against Deputy Warden B. Hofner (sp?); ADW Dan Hawkins; RUM M. Cooley; Officer Ellis; Officer Boatman; Officer Saunders; Officer Kenndy [sic] and all other MDOC personnel that are unidentifiable due to grievant's inability to access files. Grievant tried to resolve matters herein by sending written correspondence September 12, 2009, with no resolution.

Grievance 1036. In his grievance, plaintiff listed the following complaints:

> On September 15, 2009, Internal Affairs Investigator Bruce Sibert visited grievant at the Brooks Correctional Facility (LRF), concerning grievant being assaulted by Officer Ellis on 8-18-09, at approximately 10:36 a.m., while confined at the Lakeland Correctional Facility (LCF). MDOC investigator indicated to grievant that it appears documents pertaining to this investigation have been altered. It seems the MDOC has proof that grievant was assaulted due to, and as a direct result of, filing a grievance against Ellis. In further acts or [sic] retaliation Ellis wrote a retaliatory misconduct. These acts violate grievant's First and Eighth Amendment rights to be free from retaliation and cruel and unusual conditions of confinement, violating departmental policy 03.02.130, pg. 2 ¶ K and 03.03.130. Officer Kennedy witnesses the assault. All parties listed above have personal knowledge of these violations. Grievant should be provided enough factual information to properly exhaust in accordance with 28 U.S.C. § 1997(e). Resoultion [sic]: Grievance be material proof of facts presented.
>
> Grievance mailed to LCF's Warden's Office for processing on 9-16-09 @ 1400 hrs. Grievance written with-in 24 hours of Sibert's interview.

*Id.*

The record reflects that the MDOC was unable to resolve the grievance at Step I because plaintiff had been transferred from LCF, but that "the incident" was under investigation. *See* Grievance 1036 Step I Memorandum (Sept. 30, 2009) (docket no. 18-3). The MDOC's Step II response stated that "[t]he Step I response is supported." *See* Grievance 1036 Step II response (docket no. 18-3). The Step III response stated that the issues raised in Steps I and II were

considered and appropriately investigated at the facility level and that the Step II decision was upheld.  *See* Grievance 1036 Step III response (docket no. 18-3).

RUO Ellis takes the position, without citation to authority, that Grievance 1036 exhausted plaintiff's excessive force claim but failed to exhaust the other claims alleged against him in this action.  The court disagrees with Ellis' legal analysis.  There is no evidence that plaintiff properly exhausted a grievance against Ellis for either the use of excessive force or retaliation related to the alleged assault of August 18, 2009.   The incident grieved in Grievance 1036 was plaintiff's September 15, 2009 meeting with Inspector Siebert, which occurred almost one month after Ellis allegedly assaulted plaintiff.  In Grievance 1036, plaintiff complained unidentified documents related to the MDOC's investigation of the alleged assault had been altered.  In addition, after meeting with Inspector Siebert, plaintiff speculated that the MDOC had documents which could support a retaliation claim against Ellis.  Accordingly, Grievance 1036, which grieved an incident that occurred on September 15, 2009, did not properly exhaust plaintiff's claim that Ellis used excessive force and retaliated against him back on August 18, 2009.

Furthermore, while plaintiff's mother allegedly prompted an MDOC investigation of the alleged assault, her actions did not excuse plaintiff from his responsibility of properly exhausting a grievance prior to filing the present § 1983 action.  Neither the PLRA nor the MDOC's Policy Directives authorize a prisoner to circumvent the normal procedure for exhausting grievances by having a third-party request an internal investigation of a grievable incident.  Finally, while plaintiff ostensibly filed Grievance 1036 to obtain "factual information" to support a separate grievance regarding the August 18, 2009 assault, plaintiff does not explain why he failed to file a

grievance after the assault or why he needed additional "factual information" to properly exhaust a grievance against Ellis.

Viewing the evidence in the light most favorable to plaintiff, the record reflects that he failed to properly exhaust a grievance against RUO Ellis for the alleged use of excessive force and retaliation that occurred at LCF on August 18, 2009. *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, RUO Ellis is entitled to summary judgment on grounds of lack of exhaustion.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that RUO Ellis' motion for summary judgment (docket no. 17) be **GRANTED** and that this action be **DISMISSED**.


Dated:  January 17, 2012                            /s/ Hugh W. Brenneman, Jr.
                                                    HUGH W. BRENNEMAN, JR.
                                                    United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).