UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY WILLIAM NEAL,

        Plaintiff,

v.

UNKNOWN ELLIS, *et al.*,

        Defendants.

                              /

Case No. 1:10-cv-1075

Hon. Gordon J. Quist

**REPORT AND RECOMMENDATION**

       This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendant David Ellis' motion for summary judgment (docket no. 49). The motion is unopposed.

       **I.**       **Background**

       Plaintiff filed a complaint naming eight defendants. Compl. (docket no. 1). The incidents at issue in this action occurred at the Lakeland Correctional Facility (LCF). On initial screening, the court dismissed all claims except plaintiff's allegation that Resident Unit Officer (RUO) Ellis retaliated against him and used excessive force against him in violation of the First and Eighth Amendments. The court previously summarized plaintiff's allegations against RUO Ellis as follows:

> According to the complaint, on June 19, 2009 at 12:30 p.m., Plaintiff asked Defendant Ellis for toilet paper. Defendant Ellis was aware that Plaintiff had a medical condition that caused him to use the bathroom more frequently. Ellis allegedly joked about Plaintiff's condition, and refused Plaintiff's repeated requests for toilet paper. When Plaintiff asked for a grievance form, Ellis refused, telling Plaintiff, "[Y]ou don't want no grievance, really you don't!" (Compl., ¶ 13, Page ID #6.) Much later in the day, when Defendant Boatman returned to the unit, Plaintiff asked Boatman for toilet paper. Boatman expressed surprise that Ellis had not given

Plaintiff toilet paper long before, and he then gave Plaintiff the toilet paper. That same day, Plaintiff filed a grievance against Ellis. . . .

On August 18, 2009, Plaintiff and two other prisoners were called to go to the Control Center to be heard on a misconduct ticket. Defendant Ellis was present and told Plaintiff, "Neal, I know your name, you wrote a grievance on me." (Compl., ¶ 16, Page ID #7.) Ellis became irate and was verbally abusive, using racial epithets. Plaintiff remained calm. Ellis then challenged Plaintiff to a fight, stating, "When you get back from up front being heard on that ticket, I'm going to take you in the back and beat your 'black ass' and if you decide to write a grievance on me for not giving you toilet tissue, I can imagine what you'll do when I beat the shit out of you." (Id., ¶ 17, Page ID #8.) When the three prisoners began to move toward the front, Defendant Ellis spit on Plaintiff. Plaintiff expressed disbelief and asked if Ellis had just spit on him. Ellis said, "Yeah, I spit on you do something about it." (Id., ¶ 18.) Ellis then grabbed Plaintiff by the arm so hard that he dislocated Plaintiff's shoulder from the socket. Plaintiff was handcuffed by the other unnamed Defendant corrections officers who were present. He was taken to Defendant Hofner's office, where he was asked to write out his statement. Defendant Hofner told Plaintiff that the other staff members had made statements and had told Hofner that Ellis had started an argument with Plaintiff, had spit on Plaintiff, and had assaulted Plaintiff. Hofner advised Plaintiff that, notwithstanding the staff corroboration, he was required to place Plaintiff in segregation for a day or two. Plaintiff was confined to segregation for ten days. . . .

On the date of the assault, Plaintiff complained about extreme pain in his shoulder and requested medical attention. He was seen by Nurse Gary Baker. Baker gave Plaintiff Motrin and told him that he would be seen by a doctor and x-rays would be ordered. Plaintiff allegedly sat in segregation all night in pain, and he again requested medical attention the next day, August 19, 2009. He saw Nurse Deanna Earl, who again prescribed Motrin for the pain. She ordered that pictures be taken of the bruises on Plaintiff, and those pictures were taken two days later.

On August 22, 2009, Plaintiff was interviewed by Inspector Desmond and an unknown assistant deputy warden from another facility. Plaintiff was again informed that he would not be heard on the misconduct because staff had admitted that Plaintiff was the one who was assaulted. Plaintiff was also advised that he would be transferred to another Level II facility, allegedly because of his grievances and complaints.

Plaintiff's mother came to visit on August 20, 2009, after having learned of the assault. Because she was very upset, staff allowed only a non-contact visit, notwithstanding Plaintiff having been informed that he was not being punished. After she left the prison, Plaintiff's mother reported the assault to the Michigan State Police and contacted the headquarters of the Michigan Department of Corrections

2

(MDOC). Plaintiff was transferred to Brooks Correctional Facility (IBC) on August 28, 2009.

On September 13 or 14, 2009, Plaintiff was visited by Bruce Siebert of the MDOC Internal Affairs Division, who was investigating the matter. Siebert informed Plaintiff that the major misconduct ticket would not be heard and Plaintiff could file a grievance on the matter. Plaintiff filed a grievance on September 16, 2009.

On September 18, 2009, Plaintiff received a Step I response to the grievance he filed on June 19, 2009, regarding the denial of toilet paper. Plaintiff alleges that the grievance response was falsified and untimely. A response to Plaintiff's September 16, 2009 grievance was continuously delayed and ultimately denied because the incident was under investigation by the Internal Affairs Division. (Att. E. to Compl., 42-53.)

Plaintiff alleges that he has been transferred for filing a grievance against Ellis. He also contends that he was deprived of due process by the transfer because he was sent to a less desirable prison facility and consequently lost one of the best-paying jobs offered by the MDOC. Further, Plaintiff alleges that Ellis' assault was made in retaliation for Plaintiff's protected conduct in filing a grievance. In addition, Plaintiff alleges that his rights under the Eighth Amendment were violated by Ellis' assault and by the other Defendants' deliberate indifference to that assault. He also alleges that Ellis' denial of toilet paper violated the Eighth Amendment. Further, he complains that he was subjected to racial discrimination in violation of the Equal Protection Clause. . . .

Opinion at pp. 1-5 (docket no. 8). The Court previously dismissed all of plaintiff's claims against RUO Ellis except for plaintiff's claim of excessive force. *See* Order Adopting in part and Rejecting and Remanding in part the Report and Recommendation (docket no. 22).

    **II.    RUO Ellis' motion for summary judgment**

    **A.    Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2nd Cir. 1996). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing

4

investigation of the record" to demonstrate the existence of genuine issues of material fact. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

### B. Excessive Force

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). The Supreme Court has held that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)); *see also Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). An Eighth Amendment claim includes both an objective and a subjective component. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). To satisfy the objective component, the pain inflicted must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). In this regard, "[t]he seriousness of the injuries are not dispositive." *Williams*, 631 F.3d at 383.

"The subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. The relevant inquiry with respect to the subjective component is

5

"whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6. In analyzing such claims, courts evaluate the injury suffered, "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id*. at 7, quoting *Whitley*, 475 U.S. at 321.

Courts must give deference to actions prison guards take to maintain prison discipline, as long as those actions are taken pursuant to a considered choice and not in bad faith or for no legitimate purpose. *Whitley*, 475 U.S. at 321-22. "[Not every] malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. Consequently, where the use of some force is required to restore order, it does not violate the Eighth Amendment unless the force used is "repugnant to the conscience of mankind" or the force is used "maliciously and sadistically for the very purpose of causing harm." *Id.* at 9,10 (citations omitted). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . This is true whether or not significant injury is evident." *Id.* at 9.

**C.     Discussion**

In his deposition, plaintiff testified as follows. RUO Ellis was talking to plaintiff and eating sunflower seeds, when one of the seeds came out of Ellis' mouth and hit plaintiff's clothing. According to plaintiff, the seed "hit my button and fell to the ground." Plaintiff's Dep. at p. 34 (docket no. 50-2). Plaintiff stated that there was spit on the seed "because it kind of slimed off the button and hit the ground." *Id.* At that point, there was some distance between plaintiff and Ellis. *Id.* Plaintiff was "highly upset" and swore. *Id.* at pp. 34-35. Plaintiff said something like, "You just

spit on me?" and Ellis responded by saying something like, "yeah, bitch or yeah, nigger." *Id.* at p. 35. Then, plaintiff "stepped" and "lunged" at Ellis. *Id.* At that point in time, Ellis grabbed plaintiff's arms and pushed him back. *Id.* at pp. 35-36. Plaintiff admits that he "pushed back," that he pushed Ellis onto a table, that they "got to wrestling and tussling" and somehow Ellis ended up on the ground under plaintiff. *Id.* at pp. 36-37. While plaintiff was on top of Ellis, Ellis held on to plaintiff's arm and tried to pull plaintiff down. *Id.* at p. 37. Corrections Officers tried to break up the fight. *Id.* The officers tried to pull Ellis away from the fight, while prisoner Maxwell tried to pull plaintiff away. *Id.* As Ellis and plaintiff were being separated, plaintiff could feel his shoulder dislocating but Ellis would not let go of plaintiff's arm. *Id.* at p. 38. Eventually, the other officers were able to pull Ellis' hands off of plaintiff. *Id.* at p. 39.

RUO Ellis gave a different version of events in his affidavit. Ellis stated that on August 18, 2009, he was in the E-2 courtyard at LCF chewing sunflower seeds (which were available from the LCF vending machine) and spitting husks on to the ground. Ellis Aff. at ¶ 5 (docket no. 50-3). Plaintiff and another prisoner, escorted by RUO Annette Saunders arrived, and were waiting for a third prisoner to be escorted to the Control Center for a misconduct hearing. *Id.* at ¶¶ 5-6. Ellis observed plaintiff becoming agitated at RUO Saunders, because plaintiff thought the misconduct ticket was bogus. *Id.* Ellis approached plaintiff and engaged in a conversation with plaintiff in an attempt to calm him down and de-escalate the situation. *Id.* at ¶ 7. Ellis tried to engage plaintiff in "common ground" by discussing a previous grievance that plaintiff had filed against Ellis regarding toilet paper. *Id.* at ¶ 8. Ellis mentioned that he could have issued a misconduct to plaintiff when he let the housing unit without authorization to complain about the

toilet paper, but he did not. *Id.* The de-escalation technique did not have the intended effect and plaintiff remained agitated. *Id.* at ¶ 9.

A sunflower husk flew out of Ellis' mouth while he was speaking to plaintiff and landed on his chest area. *Id.* at ¶ 10. Ellis did not intentionally spit on plaintiff. *Id.* Plaintiff moved within about two inches of Ellis, which, based on his training, Ellis interpreted as a sign of physical aggression. *Id.* at ¶ 11. Ellis' instinctive reaction was to secure the area around him by employing a double hand thrust to plaintiff's chest. *Id.* at ¶ 12. Plaintiff then struck Ellis in the head/neck area causing his uniform hat to fly off. *Id.* at ¶ 13. Ellis grabbed plaintiff's wrists to prevent further assault. *Id.* at ¶ 14. As additional staff arrived, plaintiff stopped further aggression against Ellis. *Id.* at ¶ 16.

As an exhibit to his motion for summary judgment, RUO Ellis provided a DVD containing video from an LCF security camera which depicted the August 18, 2009 incident at issue in this lawsuit. *See* DVD (docket no. 54-1); Supplemental filing in support of defendant's motion (docket no. 57); John Klimowicz Aff. (docket no. 57-1). Plaintiff was allowed to view the video on August 22, 2012. Klimowicz Aff. at ¶¶ 2-3. Plaintiff has neither objected to Ellis' use of the video nor contested Ellis' assertion that the video depicts the August 18, 2009 incident. Accordingly, the court will accept the DVD as providing an uncontested depiction of the alleged assault involving plaintiff and defendant Ellis.

The court has reviewed the video several times. The video, which depicts a brief confrontation between an MDOC correctional officer and a prisoner, is consistent with defendant Ellis' affidavit, and not consistent at all with plaintiff.

The video is taken from an elevated view. It shows several corrections officers and inmates casually standing together. Plaintiff and defendant begin talking. Suddenly they appear to simultaneously shove each other. Plaintiff's left arm is on defendant's neck or shoulder, and defendant refrains plaintiff by holding his forearm. There is a picnic table in the picture situated behind the corrections officer, but it plays no part in the brief dust-up, as plaintiff claims. The parties do not fall on the ground, as claimed by plaintiff. Other corrections officers step between the parties and there was no further physical contact. Contrary to plaintiff's deposition testimony, the video does not depict: plaintiff pushing RUO Ellis onto a table; plaintiff and Ellis "wrestling and tussling"; Ellis landing on the ground under plaintiff; Ellis holding on to plaintiff's arm and trying to pull plaintiff down; or Ellis exerting such force on plaintiff's arm as to result in a dislocated shoulder. The confrontation is over in less than eleven seconds, although plaintiff's body language suggests he is still a little perturbed for a few moments, and then everyone present wanders off together. Based on the event as recorded on this DVD, plaintiff's deposition testimony regarding the force is blatantly contradicted by the undisputed record to the extent that no reasonable jury could believe it. *See Scott*, 550 U.S. at 380 (where one party's version of events is so "utterly discredited" by the events as depicted on a videotape "that no reasonable jury court could have believed him," the court should "view[] the facts in the light depicted by the videotape"). For this reason, the court may base its ruling on the motion for summary judgment by viewing the incident as shown on the videotape rather than plaintiff's imaginative and exaggerated deposition testimony. *Id.*

Based on this record, RUO Ellis did not violate plaintiff's constitutional rights by using excessive force. First, Ellis' limited use of force failed to meet the objective component of

9

an excessive force claim, because there is no evidence that the pain inflicted on plaintiff was "sufficiently serious" to raise constitutional concerns. *See Wilson*, 501 U.S. 298. This must have been the very type of incident the Supreme Court had in mind when it referred to the observation by the 2nd Circuit that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *See, Hudson,* 503 U.S. at 9. Second, plaintiff has failed to meet the subjective component. The record reflects that Ellis applied minimal force to protect his personal space and restore order. The record does not reflect that Ellis applied force "maliciously and sadistically for the very purpose of causing harm." *See Hudson*, 503 U.S. at 9-10.

Accordingly, RUO Ellis' motion for summary judgment should be granted as to the remaining excessive force claim.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that RUO Ellis' motion for summary judgment (docket no. 49) be **GRANTED** and that this action be **DISMISSED**.


Dated: February 22, 2013                    /s/ Hugh W. Brenneman, Jr.
                                            HUGH W. BRENNEMAN, JR.
                                            United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).